UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMANUEL LARS BREW,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DANIEL FEHDERAU, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:17-cv-00681-AWI-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>(ECF No. 10)<br><br>**OBJECTIONS DUE WITHIN TWENTY-ONE (21) DAYS** |

Plaintiff Emmanuel Lars Brew is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges two separate sets of claims, the first of which is targeted at Defendant Daniel Fehderau, a deputy district attorney, and Defendant Santa Clara County, for failing to provide physical evidence to enable Plaintiff to perform DNA testing to establish his innocence for crimes for which he was convicted. The second set of claims is directed at Defendant California Department of Corrections and Rehabilitation ("CDCR") for actions related to Plaintiff's treatment while in custody at the California Substance Abuse Treatment Facility at Corcoran, California ("SATF"), including a transfer and a failure to provide all good time credits.

The Court screened Plaintiff's complaint and provided leave to amend on June 14, 2017. (ECF No. 8). Plaintiff filed a 96-page First Amended Complaint on July 17, 2017, which is now before this Court for screening. (ECF No. 10)

1

# I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

# II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's first set of claims concern the denial of Plaintiff's motion for DNA testing during trial. Plaintiff sues Daniel Fehderau, Deputy District Attorney, who opposed Plaintiff's

motion at trial and allegedly has evidence that could be tested. Plaintiff also sues the County of Santa Clara for "enforcing creation and implementation of policies, procedure, and prac[tices]" related to the denial of DNA testing. Plaintiff alleges that defendant Daniel Fehderau violated Plaintiff's First Amendment rights by denying him access to available DNA evidence for testing. Plaintiff alleges that he needs the DNA evidence to obtain exculpatory evidence that he can use to petition the court. Plaintiff claims he has met all the requirements of the California statute to obtain such evidence, including that there was an issue of another perpetrator.

Plaintiff originally raised this issue in Superior Court before Superior Court Judge Sharon A. Chatman. Judge Chatman continued the matter to allow Plaintiff time to research and prepare the motion. In approximately 2007, Judge Chatman ruled that Plaintiff's motion was untimely and permitted Plaintiff to withdraw the motion and file at a later date during post-conviction/sentencing.

In approximately March 2015, Plaintiff filed a motion for the appointment of counsel to prepare and file a motion for DNA testing. In the same month, Judge Thang Nguyen Barrett granted the motion and appointed an attorney named Eric Weaver to represent Plaintiff. In approximately July 2015, Mr. Weaver determined Plaintiff's claim should be presented via a habeas petition. However, it was Plaintiff's understanding that he could not obtain discovery via a habeas petition.

Thereafter, in November 2015, Judge Ronald I. Toff denied Plaintiff's motion. Plaintiff then filed an extraordinary writ of mandate/prohibition in the Sixth District Court of Appeal pursuant to Penal Code 1405(k). In December 2015, Plaintiff's writ was denied. In January 2016, Plaintiff filed a similar writ with the California Supreme Court, who transferred the writ to the Court of Appeal once again. The Court of Appeal denied the writ. Plaintiff was unable to completely research and prepare a writ of review within the time allotted and was foreclosed any other remedy. Plaintiff claims he is not challenging his conviction—rather he requires evidence to support his assertion of innocence in other fora.[1]

---

[1] Plaintiff states that he also wishes to ad Mary Ellen Brew and Cassandra Brew as plaintiffs, but has been unable to present their claims. Plaintiff does not provide any supporting facts regarding their allegations or provide any basis for appearing on their behalf.

3

Plaintiff's second set of claims concern Plaintiff's transfer and denial of good time credits. Plaintiff sues the California Department of Corrections and Rehabilitation for enforcing policies, procedures, and practices for all prisons. In his complaint, Plaintiff also specifically names Joel Martinez and Stu Sherman as having deprived Plaintiff of good time credits earned for good behavior pursuant to 15 C.C.R. § 3377.2(a)(10). On approximately February 8, 2017, Plaintiff appeared before a unit classification committee. Plaintiff informed the committee of the urgency of his circumstances in that his mother had a brain tumor. Plaintiff was informed that CDCR would honor his family hardship pursuant to California statutes.

Plaintiff also alleges he was retaliated against for filing 602 grievances. After he filed his 602, he was transferred to a prison beyond his family's ability to travel. Once transferred, Plaintiff had far few programming opportunities, a diminished law library, which permits only 2-3 visits per week, and an "infestation of transgenders and homosexuals with AIDS."

### III. PRIOR SCREENING ORDER

The Court screened Plaintiff's original complaint on June 14, 2017. (ECF No. 8). The Court explained that Plaintiff's claims regarding DNA testing were barred by the *Rooker-Feldman* doctrine because Plaintiff previously sought relief in state court and was impermissibly using federal court as another appeal. The Court also held that Plaintiff's transfer to another prison did not give rise to a deprivation of a liberty interest requiring due process. The Court explained the legal standards for equal protection and explained how Plaintiff had not alleged any intentional discrimination on the basis for a protected class. Moreover, the Court stated that Plaintiff had not pled facts establishing that the transfer was done in retaliation for protected conduct. The Court gave Plaintiff leave to amend his complaint with the assistance of the Court's explanation of the applicable legal standards.

### IV. DISCUSSION

The Civil Rights Act, under which this action was filed, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

4

> causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, a plaintiff must allege that: (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A person deprives another of a constitutional right "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between her and the claimed constitutional

violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

      **A.    DNA Testing (Defendants Fehderau and Santa Clara County)**

Plaintiff alleges that he was denied access to DNA testing following his conviction and claims that the DNA testing would have exonerated him of any wrongdoing. Plaintiff notes that he has previously sought relief in Santa Clara County Superior Court, the California Court of Appeal for the Sixth District, the California Supreme Court, and then again in the Sixth District.

Federal trial courts generally may not act as appellate courts over state proceedings:

> The *Rooker–Feldman* doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts. Congress, in 28 U.S.C. § 1257, vests the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court judgments. *Lance v. Dennis,* 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (per curiam). Accordingly, "[r]eview of such judgments may be had only in [the Supreme] Court." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the "de facto equivalent" of such an appeal. *Noel v. Hall,* 341 F.3d 1148, 1155 (9th Cir. 2003).
>
> To determine whether an action functions as a de facto appeal, we "pay close attention to the *relief* sought by the federal-court plaintiff." *Bianchi v. Rylaarsdam,* 334 F.3d 895, 900 (9th Cir. 2003) (internal quotation marks and citation omitted). "It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel,* 341 F.3d at 1163; *see also Skinner v. Switzer,* —— U.S. ——, 131 S.Ct. 1289, 1297, 179 L.Ed.2d 233 (2011) (emphasizing that the *Rooker–Feldman* doctrine is limited to cases "brought by state-court losers ... inviting district court review and rejection of the state court's judgments") (internal quotation marks, alteration, and citation omitted).

*Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012).

Plaintiff seeks the exact relief that was denied in state court—an injunction compelling some variety of DNA testing that he believes will establish his innocence. Plaintiff sought this relief in state court and pursued his appeals through the state court process. He now claims that the state court erred. Thus, Plaintiff's claim is a *de facto* appeal from the judgment of the state court and is barred by the *Rooker-Feldman* doctrine. *Id.* at 781. If Plaintiff is alleging that Defendants engaged in malfeasance during the DNA testing motion process, his claim is also "inextricably intertwined" with the state court decision because it "can only be predicated upon a conviction that the state court was wrong." *Id.* at 782. Plaintiff's claim that a district attorney conspired "to prevent him from obtaining DNA testing" is "inextricably intertwined with the state court decision," which "is precisely [the] sort of horizontal review of state court decisions that the *Rooker-Feldman* doctrine bars." *Id.*

Plaintiff's claim that he is entitled to evidence subject to DNA testing pursuant to California law is thus barred by the *Rooker-Feldman* doctrine and should be dismissed.

### B. Transfer to SATF (Defendant CDCR)

#### 1. Violation of Fourteenth Amendment – Due Process

Plaintiff alleges that he was not provided due process because he was not afforded a hearing before he was transferred to SATF. The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977). The U.S. Supreme Court has specifically held that a transfer to a different prison does not implicate a liberty interest, and thus does not implicate the Due Process clause:

> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

*Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (emphasis in original); *Quach v. Appleberry*,

Case No. CIV 2:08-00664-HWG-SOM, 2009 WL 1759635, at *5 (E.D. Cal. June 22, 2009) ("A transfer alone does not constitute a substantial hardship; prisoners have no liberty interest in avoiding being transferred to another prison.").

Nor does the fact that Plaintiff was transferred to a different prison away from his family implicate any constitutional interest. *Anderson v. Deleon*, Case No. C 12-6055 SI PR, 2013 WL 892276, at *5 (N.D. Cal. Mar. 8, 2013) ("Loss of a prison job, assigning an inmate to a prison far from his family and friends, and the like, which result from interprison transfers, are not constitutionally protected interests.") (citing *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983)); *Quach*, 2009 WL 1759635, at *5 ("Quach alleges the loss of visits from his family as a result of his transfer, claiming that he was relocated too far for his family to travel to see him. The court notes that 'there is no constitutional right to access to a particular visitor.'") (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989)). Plaintiff cannot state a due process claim merely because he was transferred to a less desirable prison without any hearing.

### 2. Violation of Fourteenth Amendment – Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) ("The Equal Protection Clause requires the State to treat all similarly situated people equally."). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702-3 (9th Cir. 2009), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601-02 (2008).

Plaintiff's Complaint does not explain how similarly situated individuals were treated differently than he is being treated, nor does he allege any facts that indicate intentional discrimination based on Plaintiff's membership in a protected class. Plaintiff has not alleged an equal protection claim under the Fourteenth Amendment.

### 3. Violation of First Amendment – Retaliation

Allegations of retaliation against a prisoner for exercising his First Amendment rights may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "A retaliation claim is not plausible if there are 'more likely explanations' for the action." *Holmberg v. Dept. of Corrs. of Wash.*, Case No. 3:15-cv-05374-RJB-JRC, 2016 WL 7383871, at *5 (W.D. Wash. Nov. 22, 2016) (citing *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)).

Plaintiff alleges that Defendant CDCR took retaliatory action against him by transferring him to SATF. He does not, however, explain what protected conduct he engaged in that preceded the retaliation, nor does he allege facts demonstrating that the protected conduct was the cause of the transfer. Plaintiff also alleges that his transfer has impaired his ability to file complaints in court, but does not explain this allegation. Plaintiff has not alleged facts sufficient to state claim for retaliation.

### 4. Loss of Good Time Credits

Finally, Plaintiff's contention that he did not get the good time credits due under prison regulations does not state a violation of constitutional rights. Plaintiff claims that he did not get the custody reduction due pursuant to 15 C.F.R. § 3377.2 (9) and (10). This does not state a violation of the U.S. Constitution. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) ("the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.").

Moreover, to the extent Plaintiff claims that his failure to obtain sufficient good time credits affects the duration of his custody, such a claim must be brought in a habeas corpus proceeding and cannot proceed through a § 1983 case. *Simpson v. Thomas*, 528 F.3d 685, 693 (9th Cir. 2008) ("A state prisoner cannot use a § 1983 action to challenge the 'fact or duration

of his confinement,' because such an action lies at the 'core of habeas corpus.' ").

## V. FINDINGS AND RECOMMENDATIONS

The Court has screened Plaintiff's first amended complaint and finds that it fails to state a claim for the reasons explained above. The Court will not recommend granting further leave to amend. The Court previously screened Plaintiff's original complaint and provided Plaintiff with leave to amend with the benefit of ample legal guidance.

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. That this case be DIMISSED for failure to state a claim.
2. That the Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 27, 2017**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE